DILLON, Respondent, v. DILLON, Appellant.

*No. 193. Argued March 31, 1970.—Decided April 28, 1970.*
(Also reported in 176 N. W. 2d 362.)

For the appellant there were briefs by *John W. Davison* of River Falls, attorney, and *Joseph E. Flynn* and *Peterson & Popovich* of counsel, all of St. Paul, Minnesota, and oral argument by *Mr. Davison* and *Mr. Flynn*.

For the respondent there was a brief by *Lawrence P. Gherty*, attorney, and *William J. Radosevich* of counsel, both of Hudson, and oral argument by *Mr. Gherty*.

CONNOR T. HANSEN, J.   Affidavits were filed by the respective parties in connection with defendant's motions and there is considerable conflict over a number of facts. However, it is uncontroverted that the parties were married on July 9, 1949; eight children were born of this marriage; the parties maintained a residence in St. Croix county, Wisconsin, for a number of years; on or about February 1, 1966, the defendant moved to Washington, D. C., to associate with a law firm located there; in August, 1967, plaintiff and the children moved to Maryland where the children were enrolled in Maryland schools for the 1967–68 school year, with the exception of the eldest who attended a boarding school in Minnesota; following the completion of the school year (May, 1968), the plaintiff and children moved back to St. Croix county, Wisconsin, and she remained there until instituting this action in August, 1968.

Defendant alleges he is a resident of the state of Maryland, and he was served on September 3, 1968, with a summons, complaint, affidavit and order to show cause in connection with the separation action.

As we view this case, it presents two principal issues: (1) The right of the plaintiff to maintain an action for legal separation and custody of the children, and (2) personal jurisdiction over a nondomiciled defendant.

In this case, the trial court made no specific findings in support of its order. However, for the purposes of this opinion, we will consider that the trial court found that the plaintiff met the statutory requirements to bring an action for legal separation and custody of the children and also that the court had personal jurisdiction over the nondomiciled defendant.

### Legal separation.

On review, the decision of the trial court must be sustained unless it is found to be contrary to the great weight and clear preponderance of the evidence. *Strandberg v. Strandberg* (1965), 27 Wis. 2d 559, 135 N. W. 2d 241. The only evidence in this case was conflicting affidavits of the respective parties. We have examined these affidavits and it cannot be said that the trial court's determination that plaintiff was a bona fide resident of St. Croix county for not less than thirty days preceding the commencement of this action is against the great weight and clear preponderance of the evidence. Sec. 247.05 (1), Stats. Therefore, the trial court had jurisdiction of the plaintiff's action for legal separation and the temporary order awarding the plaintiff custody of the children pursuant to the provisions of sec. 247.05 (4) [2]

---

[2] "247.05 . . . .

"(4) ACTIONS FOR CUSTODY OF CHILDREN. The question of a child's custody may be determined as an incident of any action properly commenced under sub. (1), (2) or (3); or under s. 247.055; or an independent action for custody may be commenced in any county of this state in which the child is present. The effect of any determination of a child's custody shall not be binding personally against a defendant parent or guardian unless the defendant has been made personally subject to the jurisdiction of the court in the action as provided in s. 247.06."

could properly be entered. Also it was proper for the Family Court Commissioner to grant the plaintiff occupancy of the St. Croix county residence during the pendency of this action and temporary use of the automobiles then in her possession. However, on the record then before him and for reasons stated in considering the second issue, the trial judge should not have decided the motion to quash as it related to those provisions of the temporary order providing for payment of support and maintenance of the plaintiff and the minor children, and mortgage payments on the St. Croix county and Maryland residences. The question of whether the defendant's equity, if any, in the St. Croix county residence is subject to support and maintenance payments and other expenses is not before us on this appeal.

*Personal jurisdiction over a nondomiciled defendant.*

This issue requires a determination of whether Wisconsin statutes purporting to give courts of this state in personam jurisdiction over a nonresident defendant personally served outside the state are violative of the due process clause of the fourteenth amendment of the United States Constitution. The Wisconsin statutes involved are as follows:

"247.055 Jurisdiction over claims for support, alimony or property division. . . .

"(1m) PERSONAL JURISDICTION OVER NONDOMICILED DEFENDANT. If personal jurisdiction over the defendant is acquired under s. 247.057, the court may determine claims and enter a judgment in personam against the defendant in an action to determine a question of status under s. 247.05 (1), (2) and (3), or in an independent action for support, alimony or property division. Such independent action must be commenced in the county in which the plaintiff resides at the commencement of the action."

"247.057 Actions in which personal claims are asserted against nondomiciled defendant. If a personal claim is

asserted against the defendant in an action under s. 247.05 (1), (2) or (3) or 247.055 (1m), the court has jurisdiction to grant such relief if:

"(1) The defendant resided in this state in marital relationship with the plaintiff for not less than 6 consecutive months within the 6 years next preceding the commencement of the action;

"(2) After the defendant left the state the plaintiff continued to reside in this state;

"(3) The defendant cannot be served under s. 247.06; and

"(4) The defendant is served under s. 247.062 (1)."

The essence of sec. 247.055 (1m), Stats., and sec. 247.057, is repeated in sec. 262.05 (11),[3] Wisconsin's "long-arm" statute.

The defendant concedes the United States Supreme Court has upheld the state's long-arm statutes, but argues that *Pennoyer v. Neff* (1878), 95 U. S. 714, 24 L. Ed. 565, is still the rule with respect to claims for alimony, support and property division and that in domestic relation matters a state cannot exercise in personam jurisdiction over a nonresident not personally served in the state. We do not agree with this position.

Since *Pennoyer,* two broad concepts have been developed which encompass the requirements of jurisdictional due process.[4] The first requirement is that the manner

---

[3] "Personal jurisdiction, grounds for generally. . . .

"(11) CERTAIN MARITAL ACTIONS. In any action to determine a question of status under s. 247.05 (1), (2) and (3), or in an independent action for support, alimony or property division commenced in the county in which the plaintiff resides at the commencement of the action when the defendant resided in this state in marital relationship with the plaintiff for not less than 6 consecutive months within the 6 years next preceding the commencement of the action, and after the defendant left the state the plaintiff continued to reside in this state, and the defendant cannot be served under s. 247.06 but is served under s. 247.062 (1)."

[4] *Judicial Economy; Fairness And Convenience Of Place Of Trial: Long-Arm Jurisdiction in District Courts;* G. W. Foster, Jr. (1968), 47 F. R. D. 73.

of service employed must be reasonably calculated to give actual notice.

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . ." *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U. S. 306, 315, 70 Sup. Ct. 652, 94 L. Ed. 865.

The statutes involved in this case are in keeping with the due process requirement of notice since only personal service on the out-of-state defendant will invoke jurisdiction. Sec. 247.057, Stats., and 247.062 (1).

The second concept is amenability, or those conditions which are sufficient to subject a defendant to personal jurisdiction. As we view this case, that is what the defendant claims is missing from the Wisconsin statutes.

The concept in *Pennoyer, i.e.,* that personal jurisdiction be grounded on consent, presence or doing business within the state, did not prove to be a satisfactory rule as our nation moved into the twentieth century. In *International Shoe Co. v. Washington* (1945), 326 U. S. 310, 66 Sup. Ct. 154, 90 L. Ed. 95, the supreme court considered amenability and enunciated further standards for establishing the limits of a state's jurisdictional power.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, supra,* 316.

In the same case, the supreme court also made clear that "minimum contacts" were not to be measured by mechanical or quantitative standards. Other factors were

noted in determining whether activities were amenable to suits within a state. First, if acts were not related to the cause of action, the nature and quality of those activities would have to be more significant in order to subject the defendant to personal jurisdiction.

". . . Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there." *International Shoe Co. v. Washington, supra,* 317.

The supreme court also indicated that to the extent a corporation exercised the "privilege" of conducting business, it enjoyed the benefits and protection of the laws of that state. This aspect was later enlarged upon in *Hanson v. Denckla* (1958), 357 U. S. 235, 78 Sup. Ct. 1228, 2 L. Ed. 2d 1283. Finally, an "estimate of the inconveniences" to a defendant in standing trial away from its principal place of business was considered relevant in determining whether contacts were sufficient to bring a defendant within the jurisdiction of a state.

In *McGee v. International Life Ins. Co.* (1957), 355 U. S. 220, 78 Sup. Ct. 199, 2 L. Ed. 2d 223, the supreme court underscored a consideration first enunciated in *Travelers Health Asso. v. Virginia* (1950), 339 U. S. 643, 70 Sup. Ct. 927, 94 L. Ed. 1154, *i.e.,* the need to provide an effective means of redress. In *McGee,* the defendant insurance company, a Texas corporation, solicited by mail a reinsurance contract from a California resident. The contract was accepted and premiums were paid in California; however, the defendant had no other business or activity within California. The supreme court evaluated defendant's contact with the state of California and held them sufficient to allow California to maintain the suit.

". . . The contract was delivered in California, the premiums were mailed from there and the insured was

a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process. Cf. *Travelers Health Asso. v. Virginia,* 339 U. S. 643, 94 L. Ed. 1154, 70 Sup. Ct. 927. There is no contention that respondent did not have adequate notice of the suit or sufficient time to prepare its defenses and appear." *McGee v. International Life Ins. Co., supra,* 223, 224.

Thus, the supreme court held it was a legitimate interest of the forum to protect its citizens with respect to this particular subject matter (insurance) which was also the basis of the cause of action.

In *Hanson v. Denckla, supra,* a settlor (from Pennsylvania) created a trust in Delaware, appointed a trustee in Delaware and subsequently moved to Florida. The trustee thereafter remitted the trust income to the settlor in Florida and the settlor performed other acts of trust business there. The trustee, however, transacted no other business in Florida, nor did it have an office there. The trust assets remained in Delaware and there was no solicitation in Florida either by mail or through agents. Certain powers of appointment were exercised in Florida and the plaintiffs brought suit in Florida to determine the effect of this exercise of powers. The supreme court found that the Florida court had no jurisdiction over the Delaware trustee:

". . . The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra,* 253.

Defendant relies particularly upon this case in support of his proposition that *Pennoyer* still applies to domestic relations questions.

". . . But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt v. Vanderbilt,* 354 U. S. 416, 418, 1 L. Ed. 2d 1456, 1459, 77 Sup. Ct. 1360. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. See *International Shoe Co. v. Washington,* 326 U. S. 310, 319, 90 L. Ed. 95, 103, 66 Sup. Ct. 154, 161 ALR 1057." *Hanson v. Denckla, supra,* 251.

Although defendant has not specifically raised the question, application of "minimum contacts" to *individuals* could be challenged since all supreme court cases subsequent to *Pennoyer* discussing amenability have involved in personam jurisdiction over a corporation. The supreme court has, however, indicated that they envisaged reaching nonresident defendants who are individuals.

". . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws

which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an *individual* or corporate defendant with which the state has no contacts, ties, or relations." (Emphasis added.) *International Shoe Co. v. Washington, supra,* 319.

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and *other nonresidents."* (Emphasis added.) *McGee v. International Life Ins. Co., supra,* 222.

This was the view taken in *Calagaz v. Calhoon* (5th Cir. 1962), 309 Fed. 2d 248, 254, 255:

". . . we must first decide if the 'minimum contacts' test enunciated in *Interntional Shoe Co. v. Washington,* . . . applies to natural persons as well as to corporations. The broad language of the opinion indicates that it does . . . Moreover, the Court supported its reasoning by reference to cases, such as *Hess v. Pawloski* (1927), 274 U. S. 352, 47 Sup. Ct. 632, 71 L. Ed. 1091, and *Milliken v. Meyer* (1940), 311 U. S. 457, 61 Sup. Ct. 339, 85 L. Ed. 278, in which the defendants were natural persons. Indeed, it would seem that the same considerations of fairness and the nature of the defendant's activity in the state which are utilized in determining jurisdiction over corporations should be equally applicable when the defendant is a natural person. The 'quality and nature' of the activities control, not the number of the acts nor mechanical standards. . . . When the acts take effect within the state of the forum, it would seem fair and reasonable for that State to open its courts to its aggrieved citizen whether the alleged wrong was committed by a real or fictitious person."

While the supreme court has not yet applied "minimum contacts" to domestic relations cases, two courts have held that it does. *Soule v. Soule* (1961), 193 Cal. App. 2d 443, 14 Cal. Rptr. 417; *Mizner v. Mizner* (Nev. 1968), 439 Pac. 2d 679, certiorari denied, 393 U. S. 847, 89 Sup. Ct. 130, 21 L. Ed. 2d 117, rehearing denied, 393 U. S.

972, 89 Sup. Ct. 391, 21 L. Ed. 2d 386. Illinois [5] and Kansas [6] have also enacted statutes specifically designed to acquire in personam jurisdiction over a nonresident in actions affecting marriage by extraterritorial personal service of process.

Turning to the statutes being challenged in this case, the issue is whether a defendant, who has lived in Wisconsin in the marital relationship at least six consecutive months within the six years preceding the commencement of a divorce action, has sufficient "minimum contacts" with this state to allow in personam jurisdiction to attach. We are of the opinion that such contacts are present.

First, the "6 consecutive months" requirement constitutes more than isolated and singular contact which, under some circumstances, could fall short of the systematic and continuous activities required to establish minimum contacts. Secondly, the court in *Mizner v. Mizner, supra,* noted that strict application of *Pennoyer* to domestic relations cases only encourages migratory divorce often enabling a spouse to escape financial responsibilities while residing in another state where the plaintiff is unable to bring an action. Protecting citizens from such a result is of just as great a concern to a state as protecting the rights of residents when insurers refuse to pay claims. *McGee v. International Life Ins. Co., supra.* Finally, constitutional safeguards for the nonresident defendant are provided in ch. 262. Sec. 262.19, Stats.,[7] based on the doctrine of *forum non conveniens,*

---

[5] Ill. Rev. Stats., ch. 110, sec. 17 (1) (e).

[6] Kan. Stats. Anno., sec. 60–308 (b) (6). *See Scott v. Hall* (1969), 203 Kan. 331, 454 Pac. 2d 449.

[7] "Stay of proceeding to permit trial in a foreign forum. (1) STAY ON INITIATIVE OF PARTIES. If a court of this state, on motion of any party, finds that trial of an action pending before it should as a matter of substantial justice be tried in a forum outside this state, the court may in conformity with sub. (3)

provides defendants with a device by which they can protect against the exercise of personal jurisdiction when there is serious question whether due process will be denied by subjecting a defendant to the jurisdiction of this state. The scope of the trial court's discretion includes *inter alia* consideration of amenability and convenience to the parties and witnesses.[8] In addition, sec. 262.20 (1) enables a nonresident brought before a court in this state on a frivolous claim of amenability to recover not only legal costs but also out-of-pocket expenses up to $500.

It is also argued that the minimum contacts theory of in personam jurisdiction cannot be reasonably applied to alimony and support payments since a change of circumstances in the status of either party, subsequent to the entry of judgment, is, within the court's discretion, grounds for modification and therefore that type of judgment contains an element of inherent uncertainty. While a trial court does retain continuing jurisdiction to revise a judgment (sec. 247.25, Stats.), the question

enter an order to stay further proceedings on the action in this state. A moving party under this subsection must stipulate his consent to suit in the alternative forum and waive his right to rely on statutes of limitation which may have run in the alternative forum after commencement of the action in this state. A stay order may be granted although the action could not have been commenced in the alternative forum without consent of the moving party."

[8] "262.19 . . . (3) SCOPE OF TRIAL COURT DISCRETION ON MOTION TO STAY PROCEEDINGS. The decision on any timely motion to stay proceedings pursuant to sub. (1) is within the discretion of the court in which the action is pending. In the exercise of that discretion the court may appropriately consider such factors as:

"(a) Amenability to personal jurisdiction in this state and in any alternative forum of the parties to the action;

"(b) Convenience to the parties and witnesses of trial in this state and in any alternative forum;

"(c) Differences in conflict of law rules applicable in this state and in any alternative forum; or

"(d) Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial."

in this case is whether or not the statutes in question are to be held unconstitutional because a nonresident defendant, personally served outside the state, may be subject at a later date to changes in a decree rendered by a court which had sufficient "minimum contacts" to initially subject him to the forum's jurisdiction.

The same considerations which were sufficient to initially subject a defendant to the jurisdiction of this state would also be applicable to subsequent modifications of a divorce judgment. The changes are not automatic, but the party seeking to alter the judgment is required to show that the modification is justified by a material change in circumstances of the parties. *Kritzik v. Kritzik* (1963), 21 Wis. 2d 442, 124 N. W. 2d 581. In addition, due process requires reasonable notice to the defendant of the pending motion as provided by statute. *Block v. Block* (1961), 15 Wis. 2d 291, 112 N. W. 2d 923. In the case of a nonresident defendant, this would require personal service. Sec. 247.057, Stats.

Defendant also claims that sec. 247.057, Stats., does not apply to the facts of this case. On appeal, it is argued that defendant did not reside "in this state in marital relationship with the plaintiff for not less than 6 consecutive months within the 6 years next preceding the commencement of the action." Sec. 247.057 (1). However, in his affidavit dated November 1, 1968, defendant stated: "That your affiant did reside in marital relationship with the plaintiff for a period of more than six consecutive months within the six years preceding the commencement of this action but your affiant states that both he and his wife, Joan M. Dillon, left the state of Wisconsin to take up permanent residence in the state of Maryland, as hereinbefore recited." Therefore, the defendant admits that the provisions of sec. 247.057 (1) are met.

Defendant further contends that sec. 247.057 (2), Stats., has not been met and plaintiff did not continue to reside in this state after defendant left, but moved to

the state of Maryland where she took up permanent residence.

The key to this issue is the definition of the term "reside" in sec. 247.057 (2), Stats. Wisconsin is in accord with the general rule that in a matrimonial action the term *resident* is tantamount to domicile. *Strandberg v. Strandberg, supra,* 567, held:

"In order to create a new residence, Mrs. Strandberg must have physically abandoned her Antigo home and moved to Milwaukee county with the *specific intention* of making her residence there." (Emphasis added.)

And in *Estate of Morey* (1956), 272 Wis. 79, 82, 74 N. W. 2d 823, this court stated:

"The appeal presents an issue of fact and, therefore, the question whether the court's finding that the testator had retained his residence in Outagamie county is against the great weight and clear preponderance of the evidence.
"Two things are necessary to create a new domicile; the physical abandonment of the old domicile and a removal to and an intention to establish a new one. *Will of Eaton* (1925), 186 Wis. 124, 202 N. W. 309; *Dromey v. Tax Comm.* (1938), 227 Wis. 267, 278 N. W. 400."

In this case, an issue of fact was presented and decided in favor of the plaintiff when the trial court denied the motions of the defendant after considering conflicting affidavits of the parties.

Defendant's affidavits allege that the following conduct and actions of plaintiff illustrate an intent to establish Maryland as her domicile, thereby precluding any standing to invoke the jurisdiction of this state.

". . . (1) planning and building a new $54,000 home in the state of Maryland, (2) borrowing $20,000 from her mother for a down payment on that home, (3) making arrangements for the children to return to school in the state of Maryland in the fall of 1968, (4) applying for a driver's license as a resident of Maryland, (5) leaving Maryland without all of the aspects of family house-

hold possessions and clothes, (6) discussing with the appellant the date of the return to the state of Maryland as late as August 21, 1968, and (7) acceptance of a new station wagon by the respondent at the time of the Democratic convention in Chicago in August of 1968 for the trip back to Maryland."

On the other hand, plaintiff's affidavits recite items consistent with her claim that she never abandoned her domicile in St. Croix county:

"1. The respondent's move to the state of Maryland for the 1967–1968 school term was intended to be temporary, and was intended to be only for the school term.

"2. Respondent did not relinquish her constant and continuing desire to return to Wisconsin, nor did she ever intend to become a resident of Maryland or establish a domicile there.

"3. In the fall of 1967 while in Maryland, the respondent applied for renewal of her Wisconsin motor vehicle operator's license.

"4. During February of 1966 the registration plates on the 1963 station wagon owned by the parties, and which at that time was located in the state of Maryland, was renewed with Wisconsin registration plates.

"5. Immediately upon the completion of the school term in May of 1968, respondent returned with the children to the family home in St. Croix county, Wisconsin.

"6. Respondent maintained her voting privileges in St. Croix county, Wisconsin."

However, unlike *Strandberg, supra,* the issue of residency was reached by the trial court solely on conflicting affidavits; short of any taking of testimony or cross-examination of witnesses; and with no analysis of findings by the trial court.

The question of whether the plaintiff continued to reside in this state after the defendant left the state is too grave to be decided on affidavits such as were presented in this case. It involves the determination of disputed facts, and in our judgment, demands a judicial hearing or taking of depositions, in which full opportunity to examine and cross-examine the witnesses will be given

to all parties. *Wheeler v. Catlin* (1878), 44 Wis. 464. While we do not say that questions of jurisdiction can never be determined on the basis of affidavits, we do disapprove of materially disputed facts being presented in this manner. *Whitman v. Whitman* (1965), 28 Wis. 2d 50, 60, 135 N. W. 2d 835. When an unresolved conflict of disputed facts of significant proportions is presented, the trial court and the parties should consider proceeding under the provisions of sec. 269.32 (3), Stats.,[9] and the trial court's determination of the issue should be supported by findings of fact which could be contained in a memorandum decision supporting his determination.

The order of the trial court denying the motion of the defendant on his special appearance and that portion thereof denying the motion to quash the temporary order providing for payment of support and maintenance of the plaintiff and the minor children and mortgage payments on the St. Croix county and Maryland residences is reversed and the cause remanded for further proceedings. That portion of the trial court's order granting plaintiff temporary custody of the children, use and occupancy of the dwelling in St. Croix county, and use and possession of the automobiles now in plaintiff's possession, is affirmed.

*By the Court.*—Order affirmed in part; and reversed in part and remanded for further proceedings not inconsistent with this opinion. On appeal, no costs awarded to either party.

---

[9] "Motions and orders; service of papers. . . .

"(3) When a notice of a motion for an order has been served either party may take depositions, on notice, to be used on the hearing of such motion. Testimony may be taken on the hearing and such testimony shall be transcribed, certified and filed at the expense of the party offering the same unless otherwise ordered."