**Carmen R. MITCHIM, Appellant,**

v.

**Charles F. MITCHIM, Appellee.**

**No. 12101.**

Court of Civil Appeals of Texas, Austin.

April 3, 1974.

Rehearing Denied May 8, 1974.

Gerard P. Nugent, Phillips & Norris, Austin, for appellant.

Greg Gossett, Logan, Lear, Massey & Gossett, San Angelo, for appellee.

SHANNON, Justice.

Appellee, Charles F. Mitchim, filed suit in the district court of Tom Green County seeking a declaratory judgment that the part of the divorce judgment of a superior court of Arizona awarding alimony, attorney's fees, and costs to appellant, Carmen R. Mitchim, was void. As grounds for that relief, appellee claimed that the Arizona judgment was void because that court lacked *in personam* jurisdiction. Upon trial to the district court of Tom Green County, judgment was entered declaring the Arizona judgment void and unenforceable in Texas insofar as it awarded appellant alimony, attorney's fees and costs.

Appellant and appellee were married in 1949 and were living in California when appellee retired from the Army in 1961 after serving for more than twenty-eight years. In 1966, they moved to Arizona and remained there several years. In the autumn of 1970, the Mitchims went to Ozona, Texas. They went to Ozona because appellee wanted to visit that community with a possible view of moving there. While in Ozona, they were shown several houses by several real estate sales persons. They then returned to Arizona. On January 8, 1971, appellee moved to Ozona and there began his practice of optometry. In January of 1971, the parties' Arizona home was placed on the market. In April of that year appellant went to Ozona to visit appellee. After a few days she returned to Arizona and there on June 28, 1971, she filed the suit for divorce against appellee.

Pursuant to the Arizona "Long-Arm" statute, appellee was served with a copy of the divorce petition in Ozona on July 6, 1971. Appellee made no appearance in that proceeding and a judgment of divorce was entered on March 7, 1972, awarding appellant, among other things, a divorce, costs, attorney's fees and $950.00 each month as alimony.

In her first amended answer to appellee's petition appellant filed a cross-action asking the court to enforce the Arizona judgment, to require appellee to file a sworn inventory and appraisal, and in the

alternative, to partition appellee's military retirement benefits.

The district court of Tom Green County entered judgment declaring that the Arizona court which entered the divorce judgment did not have jurisdiction to award a personal judgment enforceable in Texas against appellee for alimony, for costs of court, or for attorney's fees and that such judgment for those purposes was void. With respect to appellant's claim in her cross-action to appellee's military retirement benefits, the court declared that appellant have $^3/_{14}$th of said benefits and that appellee have the remaining $^{11}/_{14}$th thereof.

Upon request, the court filed findings of fact and conclusions of law, and, among other things, found that appellee had resided continuously in Texas since January of 1971, and that at no time after January 9, 1971, did appellee enter the territorial boundaries of Arizona. Appellee never agreed to subject himself to the jurisdiction of the Arizona courts, and that appellee, after January 9, 1971, did not have any legally significant contacts with the State of Arizona.

The court concluded that the part of the Arizona divorce judgment providing for the payment of alimony, costs, and attorney's fees, was void for want of jurisdiction over the person of appellee or his property outside the State of Arizona. The court determined further that the service of process upon appellee outside of Arizona was insufficient to confer *in personam* jurisdiction.

█ The full faith and credit clause, U.S.Const. Art. IV, § 1, requires the courts of each state to accord the judgment of a sister state the same effect as is given that judgment in the state of its origin. Leflar, American Conflicts Law § 76 (Rev.1968). Because a judgment entered without jurisdiction is void where rendered, the full faith and credit clause does not require that a sister state recognize that judgment.

In a suit on an extrastate judgment, the defense may be that the court which entered the judgment lacked jurisdiction, and that defense is made good by proof that the facts relied upon as a basis for jurisdiction in the prior proceeding were inadequate to satisfy the requirements of due process of law. Due process is violated if the court enters an *in personam* judgment without jurisdiction over the person against whom it is entered. Leflar, American Conflicts Law § 80 (Rev.1968).

█ Unlike a divorce decree which purports only to affect the marital status of the parties, an *in rem* matter, an order to pay money as alimony, court costs, or attorney's fees is an *in personam* judgment. To be valid, that judgment must be entered by a court having *in personam* jurisdiction over the defendant. See Goodrich, Divorce and Conflict of Laws, 2 Tex.L.Rev. I, 24 (1923).

Traditionally, there have been several grounds for personal jurisdiction over a defendant, such as presence, domicile, consent or appearance. Stumberg, Principles of Conflicts of Law 326 (3rd Ed. 1963). In the case at bar appellant claims that *in personam* jurisdiction may be acquired over a non-resident defendant in a divorce proceeding by extraterritorial personal service of process if (1) a statute of the support ordering state has authorized the acquisition of such jurisdiction in that manner, and (2) there exist sufficient contacts between the defendant and the forum relevant to the cause of action to satisfy "traditional notions of fair play and substantial justice."

Our consideration of the validity of the Arizona judgment is controlled by the law of Arizona. O'Brien v. Lanpar Company, 399 S.W.2d 340 (Tex.1966). In an effort to determine that law, we will first examine the Arizona "Long-Arm" provision, Ariz.R.Civ.P. 4(e)(2), 16 A.R.S., to determine whether or not that rule applies to service of non-resident persons in divorce

proceedings. The pertinent part of that rule provides as follows:

"4(e)(2) Summons; personal service out of state. When the defendant is a resident of this state, or is a corporation doing business in this state, or is a person, partnership, corporation or unincorporated association subject to suit in a common name which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state. . . ."

The critical language, for our purposes, is "When the defendant . . . is a person . . . which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made . . . ."

The rule makes no mention of its availability in a proceeding for divorce, or in a divorce suit wherein alimony may be awarded to the plaintiff. We have been unable to discover Arizona authority applying this language to a non-resident defendant in a divorce case. In Backora v. Balkin, 14 Ariz.App. 569, 485 P.2d 292 (1971), the guardian *ad litem* filed a paternity suit for an infant in the superior court of Maricopa County, Arizona, against the defendant, a resident of Illinois. The defendant was served in Illinois pursuant to Ariz.R.Civ.P. 4(e)(2), as the infant alleged that all of the events which gave rise to her existence took place in Arizona. The court of appeals said simply, "It is our opinion that the trial court properly assumed personal jurisdiction over the defendant."

■ Unlike the single event which creates a claim for paternity, the basis for divorce action usually stems from many events. But whether one or many, those events could well occur, in the given case, within the State of Arizona. We are of the opinion that the terms of Rule 4(e)(2) are sufficiently broad to authorize the service of a non-resident person in an Arizona divorce proceeding.

■ By the terms of Rule 4(e)(2) it would be necessary to plead and show that the event or events forming the basis of the divorce occurred in Arizona. The record in the case at bar does not contain a copy of appellant's divorce petition and, as a result, we do not know the basis for appellant's divorce and, more importantly, we do not know where the event, or events, occurred which formed the basis for the default divorce judgment. Under these circumstances, we are unable to determine whether or not appellant could have availed herself of Rule 4(e)(2) to obtain valid service upon appellee.

The second aspect of appellant's contention that the Arizona court had *in personam* jurisdiction over appellee is that due process was accorded appellee because of his "minimum contacts" with the State of Arizona. As authority, appellant relies upon Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679 (1968).

In *Mizner* the petitioner and his wife had maintained their matrimonial domicile for many years in California before they separated and petitioner moved to Nevada. The petitioner filed suit for divorce in Nevada, and within a month his wife filed suit for divorce in California on the grounds of cruelty. Personal service of process was had upon petitioner at his home in Nevada pursuant to a California statute authorizing extraterritorial personal service where the defendant was a resident of that state when the cause of action arose. The petitioner made no appearance, and the California court awarded the wife a divorce and a judgment for alimony. She then filed suit on the California judgment in Nevada where the trial court granted her motion for partial summary judgment on the issue of alimony on the ground that the California judgment was entitled to full faith and credit. The Su-

preme Court of Nevada affirmed the judgment. The majoriy of the Nevada court examined the California statute and found that it had been applied by the courts of California to cases of divorce and alimony. The majority of the Nevada court was of the further opinion that the minimum contacts theory concept of *in personam* jurisdiction was particularly suited to matrimonial support cases.

Besides Mizner v. Mizner, *supra,* there are several other cases in which it is said that the concept of "minimum contacts" of the defendant with the state of the forum satisfies due process and affords a basis for *in personam* jurisdiction over a non-resident defendant in matrimonial support cases.[1] We have found no Arizona authority in point.

Appellant claims that the minimum contacts which enable Arizona to assert *in personam* jurisdiction over appellee are that before leaving Arizona he voted there, owned a home there, paid Arizona taxes, and held an Arizona driver's license. After moving to Texas, appellee continued to own the family home in Arizona, make mortgage payments, send money to appellant, and pay dental bills for his daughter. The trial court found, as a matter of fact, that appellee did not have any legally significant contacts with the State of Arizona after January 9, 1971. Appellant does not specifically attack that finding.

■ The United States Supreme Court has held that the "minimum contacts" theory, as a basis for *in personam* jurisdiction, satisfies due process in certain classes of business transactions and in tort. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). However, that court

held in May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953), that in a child custody case personal service upon a non-resident defendant outside the bounds of the state whose court awarded the custody decree was insufficient to confer *in personam* jurisdiction, and that a sister state was not bound to accord full faith and credit to that decree. Though the issue in May v. Anderson, *supra,* was child custody, it seems that the case is controlling in all *in personam* matters arising out of the marriage relationship. We agree with the language of Justice Batjer in the dissenting opinion in Mizner v. Mizner, *supra.*

"While the prerequisite of 'minimum contact' may be found in domestic relations cases to bridge the gap of extraterritorial service of process, the resulting judgments and decrees are not in the same category as those in cases arising out of contract, tort, or the other divisions of the legal field. The 'minimum contact' doctrine cannot be properly applied to confer in personam jurisdiction to the domestic relations field.

The minimum contact theory of in personam jurisdiction cannot be reasonably applied to an alimony judgment because that type of judgment contains an element of inherent uncertainty. A change of circumstances in the status of either party, subsequent to the entry of judgment is, within the court's discretion, grounds for modification."

In summary, we are of the opinion that the terms of Ariz.R.Civ.P. 4(e)(2) are broad enough to authorize the service of a non-resident person in an Arizona divorce proceeding. We have not been shown a basis for a determination whether or not appellant could have availed herself of Rule 4(e)(2) to obtain valid service upon appellee. And finally, we are of the opinion that May v. Anderson, *supra,* is still

1. Soule v. Soule, 193 Cal.App.2d 443, 14 Cal. Rptr. 417 (1961), Dillon v. Dillon, 46 Wis.2d 659, 176 N.W.2d 362 (1970), Hines v. Clen-denning, 465 P.2d 460 (Okl.Sup.1970), Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656 (1971).

controlling and that the "minimum contacts" theory, as a basis for *in personam* jurisdiction, does not satisfy due process in matters arising out of the marriage relationship.

With respect to appellant's second point of error, the Arizona judgment did not divide the military retirement benefits which appellee accumulated during his years in the Army. Appellant contends that she is entitled to one-half of the retirement benefits because she and appellee were living as husband and wife in California, a community property state, at the time the retirement vested. We do not agree.

■ Only that part of the retirement benefits which accrued during the marriage of appellant and appellee while they resided in community property states is subject to division as community property. Gaulding v. Gaulding, 503 S.W.2d 617 (Tex.Civ.App.1973, no writ), see Parson v. United States, 460 F.2d 228, 233 (5th Cir., 1972).

The judgment is affirmed.

## ON MOTION FOR REHEARING

The Arizona judgment did not divide the military retirement benefits which appellee accumulated during his years in the Army. Appellee was in the Army twenty-eight and one-half years, of which one and one-half years were served in community property states.

Appellant insists that she is entitled to one-half of the retirement benefits because she and appellee were living as husband and wife in California, a community property state, at the time the retirement program vested. Appellee contends, on the other hand, that only the part of the retire-

ment benefits which accrued during the marriage of appellant and appellee while they resided in community property states is subject to division as community property.[1]

■ The "inception-of-title" rule is applied to determine the *existence* of a community-property interest in retirement benefits. Busby v. Busby, 457 S.W.2d 551 (Tex.1970), Davis v. Davis, 495 S.W.2d 607 (Tex.Civ.App.1973, writ dism'd). The logic of the "inception-of-title" rule, however, has not been pushed to a rigorous conclusion in determining the *extent* of the community interest. Dessommes v. Dessommes, 505 S.W.2d 673 (Tex.Civ.App. 1973, application for writ pending). A number of the cases hold that the separate or community character of retirement benefits is to be determined by the status of the spouse at the time the benefit was earned. For example, if some of the benefits were earned while the employee spouse was unmarried, then that part is apportioned to him as his separate property. Webster v. Webster, 442 S.W.2d 786 (Tex.Civ.App.1969, no writ), Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968, writ dism'd), Kirkham v. Kirkham, 335 S. W.2d 393 (Tex.Civ.App.1960, no writ), see Dessommes v. Dessommes, *supra*.

■ Likewise, benefits earned after marriage, but in a common law state, should be considered separate property of the employee spouse. Gaulding v. Gaulding, 503 S.W.2d 617 (Tex.Civ.App.1973, no writ), University of Texas: Hughes, Community-Property Aspects of Profit-Sharing and Pension Plans in Texas—Recent Developments and Proposed Guidelines for the Future, 44 Texas L.Rev. 860, 871 (1961), University of Texas, Dutton, The Wife's Community Interest in Her Husband's Qualified Pension or Profit-Sharing Plan,

---

1. In the trial of the cause and on appeal, the parties have regarded the point as one to be determined by Texas law. Moreover, in the absence of judicial knowledge of the applicable Arizona law, the laws of Texas govern. Texas Rules of Civil Procedure, rule 184a.

50 Texas L.Rev. 334, 340 (1972), see People v. Bejarano, 358 P.2d 866 (Colo.1961).

The motion for rehearing is overruled.

PHILLIPS, Chief Justice (dissenting).

Appellant made a *prima facie* case by introducing a copy of the Arizona judgment at trial. Hamilton v. Newberry, 412 S.W. 2d 801 (Tex.Civ.App.1967, writ ref. n.r.e.). There is a presumption that this judgment was valid, and this presumption was not rebutted. Roberts v. Hodges, 401 S.W.2d 332 (Tex.Civ.App.1966, writ ref. n.r.e.). Therefore, I would hold that appellant is entitled to have her judgment enforced under the full faith and credit clause, Section 1, Article IV of the Constitution of the United States.

I would also hold the "minimum contacts" theory applicable for *in personam* jurisdiction in matters arising out of the marriage relationship. Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679 (1968) cert. denied, 393 U.S. 847, 89 S.Ct. 130, 21 L.Ed.2d 1117 (1968); Soule v. Soule, 193 Cal.App. 2d 443, 14 Cal.Rptr. 417 (1961), cert. denied, 368 U.S. 985, 82 S.Ct. 600, 7 L.Ed.2d 523 (1962); Scott v. Hall, 203 Kan. 331, 454 P.2d 449 (1969); Dillon v. Dillon, 46 Wis.2d 659, 176 N.W.2d 362 (1970); Hines v. Clendenning, 465 P.2d 460 (Okl. 1970); Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656 (1971). There is little doubt under the record before us that the Arizona court had the required jurisdiction under the "minimum contacts" doctrine.

In any event, I am convinced that the majority are in error in holding that only that part of the military retirement benefits which accrued while the parties were living as man and wife in community property states is subject to division as community property. These benefits vested when the parties retired in a community property state. The appellant then became entitled to her portion of that part of the interest in the retirement plan which was earned while the

parties were man and wife. Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968, writ dism'd); Kirkham v. Kirkham, 335 S. W.2d 393 (Tex.Civ.App.1960, no writ); Wilkerson v. Commissioner of Internal Revenue, 44 T.C. 718 (1965), aff'd 368 F. 2d 552 (9th Cir. 1966); Busby v. Busby, 439 S.W.2d 687 (Tex.Civ.App.1969), aff'd 457 S.W.2d 551 (Tex.1970).

I would grant appellant's motion for rehearing, reverse the judgment of the trial court and render judgment enforcing the Arizona decree and judgment for arrears in alimony. Should I err as to the enforceability of the Arizona judgment, I would render judgment awarding appellant one-half interest in that part of appellee's military retirement which was earned while the parties were man and wife.