**EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company, Petitioner,**

v.

**BANCO SEGUROS DEL ESTADO, Respondent.**

No. 98–C–0521–C.

United States District Court, E.D. Wisconsin.

Jan. 5, 1999.

**1116**

Jeffrey Kassel, Lafollette & Sinykin, Madison, WI, for Petitioner.

James A. Higgins, Attorney at Law, Wausau, WI, for Respondent.

## OPINION AND ORDER

CRABB, District Judge.

This case involves a dispute over reinsurance "treaties" petitioner Employers Insurance of Wausau acquired at Lloyd's of London. The treaties obligated the underwriters (or Retrocessionaires) to reimburse petitioner for certain types of claims made upon it. The Retrocessionaires denied that they were bound under the treaties to reimburse petitioner for certain asbestos-related losses. To settle the dispute, petitioner invoked the treaties' arbitration clause. It won, obtaining an award against the Retrocessionaires for more than $7,000,000 together with nearly $1,000,000 in attorney fees.

Presently, petitioner has moved to confirm the award against respondent Banco Seguros Del Estado (the state bank of the Republic of Uruguay), pursuant to the Inter–American Convention on International Commercial Arbitration, *reprinted in* 9 U.S.C.A § 301 (West Supp.1998). In a cross motion, respondent moves to vacate the award, contending that the award is invalid because petitioner did not give proper notice of the arbitration. Respondent argues that, as a foreign state, it should have received notice consistent with the requirements of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611. Alternatively, it argues that the method petitioner relied on to deliver notice was inconsistent with due process standards of the forum state of the arbitration, the state of Wisconsin.

In an order entered November 4, 1998, I advised the parties that respondent's motion to vacate would be decided on the briefs filed as of that date and that further briefing on petitioner's motion to confirm would be ordered if necessary. It is not: both motions may be decided now.

Briefly, I conclude that because petitioner gave notice of its invocation of the arbitration clause in a manner consistent with the terms of the treaties and the business custom of Lloyd's of London, respondent received adequate notice as guaranteed by the Inter–American Convention and due process. Respondent's motion to vacate will be denied. Separately, I find no basis to respondent's contention that the award cannot be confirmed as a matter of equity. There being no valid objection to the award, petitioner's motion to confirm will be granted.

The facts are taken from three sources: the allegations of petitioner's petition to confirm the arbitration award, respondent's answer to the petition, and the affidavits and exhibits the parties filed in support of their cross-motions. These materials are properly considered without an evidentiary hearing. The Inter–American Convention incorporates non-conflicting components of the Federal Arbitration Act, 9 U.S.C. §§ 1–16. *See* 9 U.S.C. §§ 208, 305. One such non-conflicting component is § 6, which provides that applications concerning arbitration awards "shall be made and heard in the manner provided by law for the making and hearing of motions." This section affords courts discretion to devise their own procedures for deciding arbitration-related motions, including the power to decide motions related to arbitral awards without a hearing. *See Legion Insurance Co. v. Insurance General Agency, Inc.*, 822 F.2d 541, 541–43 (5th Cir.1987) (district court properly declined to consider evidence beyond that presented in documents filed to support and oppose motion to confirm arbitration award); *see also Imperial Ethiopian Government v. Baruch–Foster Corp.*, 535 F.2d 334, 337 n. 10 (5th Cir.1976) (district

court not required to hold evidentiary hearing in order to decide issue under Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *reprinted in* § 9 U.S.C.A. § 201 (West Supp.1998)).

I find that the following facts are undisputed.

## UNDISPUTED FACTS

Petitioner Employers Insurance of Wausau is a mutual insurance company organized under the laws of the state of Wisconsin with its principal place of business in Wausau, Wisconsin. Respondent Banco de Seguros del Estado is the state insurance bank of the Republic of Uruguay. During all relevant times, its principal place of business has been Montevideo, Uruguay.

Between 1966 and 1973, petitioner entered into a series of excess retrocessional insurance "treaties" with underwriters, (or Retrocessionaires), at Lloyd's of London. In effect, the subject treaties obligated the Retrocessionaires to pay petitioner specified percentages of losses incurred by petitioner that were within the coverage of the treaties.

The Retrocessionaires are a group comprising more than one hundred individuals and firms, including respondent. When there are many underwriters to a policy sold at Lloyd's market, it is customary that the underwriter accepting the greatest portion of the risk is designated the lead underwriter and it assumes responsibility for servicing claims on behalf of all the underwriters. With respect to the subject treaties, the Merrett Syndicate is the lead Retrocessionaire.

Two London firms brokered the placement of the treaties, Pritchard & Baird, Inc., and Leslie & Godwin, Ltd. Although only Pritchard & Baird is designated in the treaties as the "intermediary" through whom "all communications and transactions" are to be transmitted by the parties, in practice, when Pritchard & Baird received a communication from petitioner, it forwarded the communication to Leslie & Godwin, which would actually notify the Retrocessionaires. Hence, in 1977, when Pritchard & Baird became insolvent, Leslie & Godwin simply began to relay information directly between petitioner and the Retrocessionaires. However, the treaties were not amended to name Leslie & Godwin as the formal intermediary.

Textually, the various treaties written for the period 1966 to 1973 are identical except for changes in allocations of loss percentages. Each of the treaties contains an arbitration clause which provides:

If any dispute or difference of opinion shall arise with reference to the interpretation of this Agreement of the rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, who shall be executive officers of insurance companies domiciled in the U.S.A., one to be chosen by [petitioner], one to be chosen by the Retrocessionaire[s], and the third by the two arbitrators so chosen within 30 days of their appointment.

\* \* \* \* \* \*

The decision of a majority of the arbitrators shall be final and binding on both parties. The expense of the arbitrators and of the arbitration shall be equally divided between each party. Any such arbitration shall be equally divided between each party. Any such arbitration shall take place in Wausau, Wisconsin, unless some other location is mutually agreed upon.

Also, the treaties contain a "Service of Suit Clause," which provides, in part:

It is agreed that in the event of the failure of [the Retrocessionaires] to pay any amount claimed to be due hereunder, [the Retrocessionaires], at the request of [petitioner], will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court

It is further agreed that service of process in such suit may be made upon Messrs. Mendes & Mount, 27 William Street, NEW YORK, and that in any suit instituted against any one of them upon this contract, [the Retrocessionaires], will abide by the final decision of such Court or

of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of process on behalf of [Retrocessionaires] in any such suit and/or upon the request of [petitioner] to give a written undertaking to [petitioner] that [Mendes & Mount] will enter a general appearance upon [the Retrocessionaires'] behalf in the event such a suit shall be instituted.

Beginning in 1984, petitioner sought reimbursement for asbestos -related claims and submitted proofs of loss to Leslie & Godwin. In response, the Merrett Syndicate retained the law firm of Lord, Bissell & Brook to audit petitioner's payment of such claims, as the Retrocessionaires had the right to do under the treaties.

By 1991, the Retrocessionaires still had not reimbursed petitioner for its asbestos-related losses. In May, petitioner sent a demand for arbitration to Lord, Bissell & Brook directly. Lord, Bissell & Brook forwarded the demand to Leslie & Godwin, which responded to petitioner in June 1991, that it had "already advised the leading underwriter" and that it was "now proceeding to notify the remaining market." Leslie & Godwin told petitioner that "[a]s soon was we have contacted the full market, we will confirm this to you."

Since the signing of the treaties, Leslie & Godwin had not been sending information to respondent directly. Instead, it sent information to respondent in care of an Argentinean insurance brokerage, Argenhall, S.A., whose place of business is in Buenos Aires, Argentina. Consequently, after petitioner made its arbitration demand, Leslie & Godwin sent a letter on June 27, 1991, to respondent, in care of Argenhall, advising respondent that petitioner had demanded arbitration and that each Retrocessionaire was being asked to confirm that Lord, Bissell & Brook should represent the Retrocessionaires collectively. On July 22, 1991, Leslie & Godwin sent a follow-up facsimile to respondent, also in care of Argenhall, requesting once more that respondent confirm the appointment of Lord, Bissell & Brook.

In August 1991, petitioner filed an action in the Circuit Court for Marathon County, Wisconsin, asking the court to compel the Retrocessionaires to proceed with arbitration. Respondent was named a respondent in the proceeding. Pursuant to the Service of Suit clause within the treaties, petitioner notified the Retrocessionaires of its filing of suit in Wisconsin state court by serving notice upon the firm of Mendes & Mount. (The record also establishes that respondent was notified of the filing of the present suit to confirm the arbitration award in the same way: by service upon Mendes & Mount.)

At first, some of the Retrocessionaires tried unsuccessfully to remove the Wisconsin state court proceeding to federal court. *See Employers Insurance of Wausau v. Certain Underwriters at Lloyd's, London*, 787 F.Supp. 165 (W.D.Wis.), *aff'd sub. nom., In the Matter of Robin A.G. Jackson*, 964 F.2d 706 (7th Cir.1992). After proceedings returned to state court, issues concerning the enforcement of the arbitration clause and selection of arbitrators were litigated. *See Employers Insurance of Wausau v. Robin A.G. Jackson*, 178 Wis.2d 755, 505 N.W.2d 147 (Ct.App.1993), *aff'd*, 190 Wis.2d 597, 527 N.W.2d 681 (1995). Eventually, by the summer of 1995, the clause was held enforceable, the arbitrators were named and the merits were resolved.

The arbitration panel issued its decision on September 18, 1995. The panel determined that petitioner was entitled to a total of $7,783,324 from the Retrocessionaires. Of this amount, Respondent's share is $181,319. Additionally, the panel's order provides:

If such amounts are not tendered by [the Retrocessionaires], either individually or collectively, within 45 days of the date of this award, the Panel makes the following additional awards:

1) Interest from the date of this award at a compound annual rate of 7.5%;

2) Attorneys fees and costs of $930,730 for which [the Retrocessionaires] are jointly and severally liable;

3) At the expiration of a period of 45 days following the date of this award, London respondents shall provide a Letter of Credit to Employers of Wausau in the amount of $9,000,000 in a form acceptable to the Wisconsin Insurance Department

and to secure payment of the ultimate liability in this matter.

Respondent did not appear or participate in the arbitration or related judicial proceedings.

## DISPUTED FACTS

Respondent asserts that it was not a client of Lord, Bissell & Brook and that it did not participate in the audit performed on behalf of the Retrocessionaires. Respondent denies that it received the June 27, 1991 letter or follow-up facsimile Leslie & Godwin sent to Argenhall and that its files contain any evidence that it received actual notice of the arbitration.

## OPINION

Two issues must be explored in resolving the cross motions to vacate and to confirm the arbitration award. First, because respondent is an arm of the Republic of Uruguay, the requirements of the Foreign Sovereign Immunities Act must be satisfied because the Act is the sole means of obtaining jurisdiction over a foreign state in federal court. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). Second, because Uruguay is a signatory of the Inter–American Convention on International Commercial Arbitration, the award may be vacated (and cannot be confirmed) if it was obtained in violation of this treaty. Although the parties do not dispute that the Foreign Sovereign Immunities Act is satisfied and that this court may exercise jurisdiction over respondent, I will discuss the Act briefly to aid understanding of the disputed issue: whether the award was obtained in violation of the Inter–American Convention's notice provision.

### A. *Foreign Sovereign Immunities Act*

The Foreign Sovereign Immunities Act governs subject matter and personal jurisdiction in actions involving foreign states. Concerning subject matter jurisdiction, the Act is drafted in the negative. Federal district courts have subject matter jurisdiction provided the foreign state is *not* entitled to immunity under the Act. *See* 28 U.S.C. § 1330(a). Also, federal courts may exercise personal jurisdiction over foreign states inso-

far as they have been given notice in accordance with the Act. *See* § 1330(b).

■ In this action, subject matter jurisdiction exists because the arbitration clause within the retrocessional treaties state that any arbitration "shall take place in Wausau, Wisconsin." Under the Foreign Sovereign Immunities Act, a foreign state has no immunity from a proceeding to confirm an arbitral award where the arbitration "is intended to take place in the United States." *See* § 1605(a)(6)(A). Alternatively, subject matter jurisdiction exists because confirmation of the award is sought under the Inter–American Convention. A foreign state has no immunity from a proceeding to confirm an award that "may be governed by a treaty . . . calling for the recognition and enforcement of arbitral awards." § 1605(a)(6)(B).

■ Moreover, because the Foreign Sovereign Immunities Act's notice requirements have been satisfied, this court may exercise personal jurisdiction over respondent. The parties agree that respondent is an "agency or instrumentality of a foreign state" under § 1603(b). Under the Act, an agency or instrumentality of a foreign state has sufficient notice of a suit when the summons and complaint are delivered "in accordance with any special arrangement for service." *See* § 1608(b)(1). Respondent was notified of petitioner's intention to confirm the arbitral award pursuant to the Notice of Suit provision of the treaties: petitioner served a summons upon the Retrocessionaires' designated agent, Mendes & Mount.

### B. *Inter–American Convention on International Commercial Arbitration*

The centerpiece of respondent's contention that the award must be vacated rests on Article 5 of the Inter–American Convention, which provides in pertinent part:

1. The recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested:

\*        \*        \*        \*        \*        \*

b. That the party against which the arbitral decision has been made was not *duly notified of the appointment of the arbitrator* or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense;

Inter–American Convention on International Commercial Arbitration, Jan. 1, 1975, *reprinted in* 9 U.S.C.A. § 301 (West Supp. 1998) (emphasis added).

There is little case law interpreting the Inter–American Convention. But respondent garnishes its presentation with case law interpreting the related Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *reprinted in* 9 U.S.C.A. § 201 (West Supp.1998), which is known commonly as the "New York Convention." It is a good choice because the New York Convention contains a notice provision similar to that of the Inter–American Convention. Article V, § 1(b) of the New York Convention provides that a court may decline to confirm an award if the party resisting confirmation was not given "proper notice." *See also Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.,* 23 F.3d 41, 45 (2d Cir.1994) ("Congress intended the Inter–American Convention to reach the same results as those reached under the New York Convention.").

■ Turning to the meat, respondent first argues that notice of the arbitration, like notice of this lawsuit, should be evaluated under the notice provisions of the Foreign Sovereign Immunities Act. Respondent explains that petitioner's reliance on the lead Retrocessionaire to notify respondent of the arbitration was not part of a "special arrangement for service." *See* 28 U.S.C. § 1608(b)(1). Thus, because petitioner did not meet the alternative methods of service under the Act, such as registered mail sent directly to the agency or instrumentality, *see* § 1608(b)(3)(B), respondent did not receive adequate notice of the arbitration as a matter of law. In support of the contention that the Foreign Sovereign Immunities Act sets forth the standard for service of process in arbitration proceedings, respondent cites *Matter of the Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Import & Export Corp.,* 978 F.Supp. 266 (S.D.Tex.1997), *aff'd,* 161 F.3d 314 (5th Cir.1998).

This offering is indigestible. Respondent cannot find support in *Trans Chemical Limited* for its contention that the Foreign Sovereign Immunities Act sets forth a standard applicable to arbitration agreements. In *Trans Chemical Limited,* a privately-held Pakistani firm moved to confirm a Texas arbitral award against a state-owned Chinese firm. The Chinese firm argued that the district court lacked jurisdiction to confirm the award because the motion to confirm had not been served in accordance with the Foreign Sovereign Immunities Act. *See Trans Chemical Limited,* 978 F.Supp. at 297. The court disagreed, noting that the agreement between the firms incorporated the Procedures of the American Arbitration Association and that the procedures provided for service by mail to the last known address of notice of judicial proceedings to confirm an arbitral award. Thus, the court concluded, the parties' agreement incorporated a "special arrangement for service" under 28 U.S.C. § 1608(b)(1). *See Trans Chemical Limited,* 978 F.Supp. at 298–99.

Respondent is correct that the court held that "since the arbitration agreement entered into by the parties adopted the AAA rules, . . . this constituted 'special arrangement for service under the FSIA,'" *see* Respondent's Mem. in Supp. of Mot. to Vacate Award, dkt. # 7, at 15, but the issue in *Trans Chemical Limited* was whether notice was sufficient for jurisdiction to exist *in the proceeding to confirm the award.* Contrary to respondent's claim, the court was not addressing the separate issue whether the award could be vacated because the Chinese firm did not have adequate notice *of the arbitration.*

■ Respondent tries another argument. It cites *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier,* 508 F.2d 969, 975 (2d Cir.1974), which holds that under the New York Convention, the adequacy of the arbitration notification should be measured in light of the forum state's standards of due process. Respondent cites *Dillon v. Dillon,* 46 Wis.2d 659, 176 N.W.2d 362 (1970), which sets forth the requirements of "jurisdictional due process" in Wisconsin:

The first requirement is that the manner of service employed must be reasonably calculated to give actual notice. "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself *reasonably certain to inform those affected.*"

*Id.* at 665–66, 176 N.W.2d at 365 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Respondent submits that petitioner's manner of notification was not reasonably calculated to inform respondent of its arbitration demand. Petitioner should have notified it directly, according to respondent; it was improper for petitioner to rely on Leslie & Godwin and the lead Retrocessionaire to act as intermediaries.

Respondent forgets that there were many Retrocessionaires and only one petitioner. In such circumstances, it is customary at Lloyd's for the party in petitioner's shoes to deal with only one lead underwriter. Respondent expects too much if it believes that petitioner should have searched the globe to confirm that every Retrocessionaire had notice of the arbitration. Indeed, it is unsurprising that custom grants petitioner this advantage when one considers that the arbitration clause favors petitioner in another important respect: petitioner has the option of arbitrating in its home forum.

Perhaps one could argue that respondent's absence once the arbitration began should have alerted petitioner to the possibility that respondent had not been notified, but that argument has no force when one considers that petitioner had served notice upon Mendes & Mount when it brought the action in Wisconsin state court to compel the arbitration. After that time, petitioner had more reason to believe that respondent had *chosen* not to participate. *See In Matter of Robin A.G. Jackson,* 964 F.2d 706, 711 (7th Cir. 1992) (observing that respondent had refused to answer the petition to compel arbitration that was filed in state court or join the petition of other Retrocessionaires to remove

state proceedings to federal court). Moreover, respondent's stake in the outcome was low. Respondent's share of the risk translated to liability of roughly $181,000, or 2.3% of the total award. If petitioner assumed that respondent had elected to let the other Retrocessionaires represent its interests, it made a reasonable assumption.

Although it is disputed whether respondent had actual notice of the arbitration, this disputed fact has no effect. At the bottom line, 1) respondent bound itself to treaties containing an arbitration clause drafted in favor of petitioner; 2) custom holds that petitioner need only inform the lead Retrocessionaire of matters relating to the operation of the treaties; and 3) respondent effectively received notice of the arbitration when its designated agent was given notice that respondent was being sued in state court to compel such arbitration. Respondent cannot complain to petitioner that the other Retrocessionaires or its designated agent failed to notify it of the arbitration. Petitioner's notification efforts were reasonable.

### C. Confirmation of Award

In its reply brief in support of the motion to vacate the award, respondent raises new arguments relating to the merits of the award that I have construed as its objections to confirmation of the award. I conclude that they are without merit.

In addition to the base award of $181.319, the arbitration panel assessed three sanctions should the award not be satisfied in forty-five days: one, interest at a annual rate of 7.5%; two, a joint and several liability to pay petitioner's attorney fees of $930,730; and three, the obligation to procure a $9,000,-000 letter of credit in favor of petitioner. Petitioner seeks to have the award confirmed in full. Respondent contends that confirmation of the award including the additional elements is "unjust and inequitable." *See* Resp't Br. in Reply, dkt. # 18, at 17–19.

With respect to the interest sanction, respondent contends that it should be entitled to the forty-five day grace period because its "failure to make timely payment was solely due to Wausau's failure to properly serve and give notice to Banco." *Id.* at 18. This contention presupposes that petitioner breached

its duty to give notice of the arbitration. It is clear that petitioner met its obligation.

██ Second, respondent complains that it should not have to pay attorney fees amounting to more than five times its share of actual damages. But respondent has provided no factual support for the proposition that its fellow Retrocessionaires have failed to pay the $930,730 and that this award actually remains unsatisfied. Indeed, even if respondent will be forced to pay the full amount, it has a remedy: respondent may file suit against the other Retrocessionaires to collect the amount unfairly apportioned to it.

Last, respondent complains that petitioner has not explained to this court the need for the letter of credit. Clearly, the necessity for the letter of credit was a matter addressed at arbitration. Having failed to participate, respondent cannot question the conclusions of the panel.

### D. *Application of Inter–American Convention*

I have applied the Inter–American Convention in this matter because the parties agree that it is applicable. However, one reservation to the United States' adoption of the treaty recognizes that parties to an international arbitration agreement may be citizens of nations that are signatories of both the Inter–American Convention and the New York Convention. In such circumstances, unless the arbitration agreement states which treaty applies, the reservation holds that Inter–American Convention should be applied only if a *majority* of the parties are citizens of nations that are signatories of the Inter–American Convention. *See* 9 U.S.C. § 305.

Although the United States and Uruguay are signatories of both treaties, petitioner and respondent have not provided information concerning the citizenship of the remaining Retrocessionaires. Hence, it is possible that the New York Convention is applicable in this matter. (The parties do not explain why they agree that the Inter–American Convention is applicable.) Nonetheless, the point appears to be technical. Because the two treaties are similar, applying the New York Convention instead of the Inter–American Convention would be unlikely to affect the outcome

### ORDER

IT IS ORDERED that

1. The motion of respondent Banco Seguros del Estado to vacate the arbitral award in favor of petitioner Employers Insurance of Wausau is DENIED;

2. The motion of petitioner to confirm the award is GRANTED; and

3. The clerk of court is directed to enter judgment in favor of petitioner confirming the arbitral award and close the case.