**BANCO DE SEGUROS DEL ESTADO, Petitioner,**

v.

**MUTUAL MARINE OFFICES, INC., Respondent.**

No. 02 Civ. 467 (SAS).

United States District Court, S.D. New York.

Aug. 6, 2002.

Jorge W. Moreira, The Moreira Law Firm, P.C., New York, NY, for Petitioner.

Daniel Hargraves, Andrew Costigan, Hargraves McConnell & Costigan, P.C., New York, NY; for Respondent.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On February 27, 2001, Mutual Marine Offices, Inc. ("MMO") commenced an arbitration against Banco de Seguros Del Estado ("Banco"), one of its reinsurers, claiming that Banco failed to comply with its contractual obligations under the Casualty Umbrella Liability Quota Share Trea-

ty (the "Umbrella Agreement"). On November 26, 2001, an arbitration panel (the "Panel") issued an interim order directing Banco to post an irrevocable letter of credit in the amount of $708,714.04. On December 19, 2001 the Panel issued another interim order denying Banco's motion for reconsideration of that order. Banco now moves to vacate the Panel's November 26th and December 19th orders (collectively the "Orders") and MMO moves to confirm the Orders.[1]

This case presents a question of first impression: Is an interim order requiring a party to post prejudgment security, which was issued prior to an arbitral hearing, a reviewable "arbitral award" under the Inter–American Convention? Because I conclude that it is, the Orders must be reviewed under the deferential standard demanded by the Inter–American Convention and must be confirmed.[2]

## I. BACKGROUND

Banco is a Uruguayan corporation wholly owned by the Government of Uruguay. *See* Pet. Mem. at 5; MMO's Memorandum of Law in Opposition to Banco's Motion to Vacate an Arbitration Decision and in Support of MMO's Cross–Motion to Confirm That Decision ("Resp.Opp.") at 7. MMO is a corporation organized under the laws of New York. *See* Affidavit of Jorge W. Moreira, attorney for Banco, ¶ 5; Resp. Opp. at 7. Banco was a party to the Umbrella Agreement during various periods between June 1, 1978 and January 1, 1984, agreeing to be responsible for a percentage of MMO's net liability on certain of its policies. *See* MMO's Statement of Position, Ex. E to Declaration of Daniel Hargraves, attorney for MMO ("Hargraves Dec."), at 2; Banco's Statement of Material Facts Pursuant to Local Rule 56.1 ("Pet.56.1") ¶ 3; Mutual Marine Office Umbrella Liability Quota Share Treaty, Ex. 2 to MMO's Statement of Position, ¶ 3; Mutual Marine Office Umbrella Liability Quota Share Treaty, Ex. 3 to MMO's Statement of Position, ¶ 3. MMO claims that Banco ceased making payments pursuant to the Umbrella Agreement in 1995. *See* MMO's Statement of Position at 2.

In February 2001, MMO commenced this arbitration.[3] *See id.;* Pet. 56.1 ¶ 4; Resp. Opp. at 3. In its Demand for Arbitration, MMO sought an award: (1) ordering Banco to pay $100,650.04 together with interest thereon; (2) ordering Banco to post and maintain a Letter of Credit in the amount of $117,373.31; (3) declaring that Banco is liable for all claims submitted by MMO to Banco under the Umbrella Agreement; (4) declaring that Banco will continue to be liable for losses under the Umbrella Agreement; and (5) any addi-

1. In its Notice Of Motion, Banco seeks an order granting summary judgment and granting a declaratory judgment construing the Award null and void. *See* 4/15/02 Notice of Motion. In the alternative, it seeks an order vacating the Award, remanding the case to the Panel for further proceedings, and awarding Banco the costs of this suit, including reasonable attorneys' fees. *See id.* While the title of its Memorandum of Law refers only to a "Motion for Summary of Judgment," the brief itself only invokes this Court's authority to vacate an arbitration award and makes no mention of a declaratory judgment. *See generally* Memorandum of Law in Support of Plaintiff Banco de Seguros Del Estado's Mo-

tion for Summary Judgment ("Pet.Mem."). Thus, I will treat Banco's motion as one for vacatur.

2. Under a *de novo* standard of review, I would likely reach the opposite conclusion. It strikes me as fundamentally unfair to require a foreign state to post prejudgment security without providing any opportunity to be heard on the merits of the underlying claim.

3. MMO claims that it commenced arbitration seeking payment of the balance in April 1997 but has provided no information about the outcome of this arbitration. *See* MMO's Statement of Position at 2.

tional damages and relief deemed appropriate, including costs and expenses. *See* Demand For Arbitration, Ex. A to Hargraves Dec., at 1–2. MMO also stated that it would apply to the Panel "at the earliest opportunity for an order requiring Banco to post appropriate security immediately pursuant to the provisions of the Umbrella Agreement, the Panel's equitable power and the relevant law." *Id.* at 2.

On September 4, 2001, the Panel ordered the parties to exchange "a brief statement of position" one week prior to the Organizational Meeting scheduled for November 5, 2001. Interoffice Memorandum via email From Dennis C. Gentry, Umpire of the Panel, to Daniel Hargraves and Jorge W. Moreira, Ex. B to Hargraves Dec., at 1. Counsel was asked to notify the Panel of any pre-hearing motions the parties wished to make. *See id.* Counsel also received an agenda for the Organizational Meeting listing "pre-hearing security" as one of the items for discussion at that Meeting. Organizational Meeting Checklist, Ex. B to Hargraves Dec. On December 20, 2001, MMO notified the Panel that it would make a pre-hearing motion seeking security. *See* 12/20/01 Email from Daniel Hargraves to the Panel, Ex. C to Hargraves Dec.

MMO served its Statement of Position on October 26, 2001, more than a week before the Organizational Meeting. *See* MMO's Statement of Position. MMO argued that the Panel should grant its request for security because: (1) such security was required under section 1213 of the New York Insurance Law; (2) such security was required by the Umbrella Agreement itself; (3) absent a provision in the arbitration agreement precluding such security, the arbitrators had the inherent power to order such relief; and (4) the security would guarantee the efficiency of the arbitration. *See* MMO's Statement of Position at 4–9. MMO provided the Panel

with copies of all of the cases and statutes cited in its brief.

On October 29, 2001, the deadline for serving its Statement of Position, Banco received MMO's Statement of Position *and* informed the Panel that it would serve its Statement of Position two days later. *See* 10/29/01 Letter from Jorge W. Moreira to Daniel Hargraves and the Panel ("10/29/01 Ltr."), Ex. F to Hargraves Dec. On November 1, 2001, Banco submitted its Statement of Position and responded to the arguments made by MMO. *See* Statement of Position—El Banco de Seguro ("Banco's Statement of Position"), Ex G to Hargraves Dec. Banco argued that the Panel lacked the authority to order the requested security because, as an instrumentality of a foreign state, it was immune from posting pre-answer or prejudgment security under the Foreign Sovereign Immunities Act ("FSIA"). *See id.* at 5. It claimed that such immunity could only be waived by an explicit contractual provision, and that the Panel should withhold any determination with regard to MMO's claim for prejudgment security until the parties had an opportunity to engage in discovery and present their evidence at a hearing. *See id.* at 5–8. Like MMO, Banco provided the Panel with copies all of the cases and statutes cited in its brief.

At the November 5th Organizational Meeting, the Panel heard the parties' respective arguments regarding MMO's request that Banco be compelled to post a Letter of Credit ("LOC") to secure an eventual arbitral award. *See* Hargraves Dec. ¶ 7; Pet. 56.1 ¶ 10; Transcript of 11/5/01 Organizational Meeting ("11/5/01 Tr."), Ex. H to Hargraves Dec. At the end of the Organizational Meeting, the Panel ruled that it was authorized to order prejudgment security and instructed the parties to confer about the proper amount of that security. *See* 11/5/01 Tr. at 80. Specifically, the Panel stated:

Gentlemen, the panel does believe that it has the authority under the contract to require the posting of [Letters of Credit] or similar security in respect of amounts of dispute here. The problem we're faced with is because of the discrepancy in the first quarter 2001 accounts before us, we can't be certain what that amount is.

*Id.* The Panel then directed MMO to provide it with the documents reflecting the sums that MMO claimed were due, and scheduled a November 26, 2001 telephone conference to determine the amount of the LOC. *See id.* at 80, 83–84.

On November 21, 2001, MMO wrote to Banco and the Panel setting forth the explanation for the apparent "discrepancy" in the first quarter 2000 accounts. *See* 11/21/01 Letter from Daniel Hargraves to Jorge W. Moreira, Ex. I to Hargraves Dec. In an email dated November 23, 2001, the Umpire acknowledged receipt of MMO's letter and stated that, if Banco wished to respond, it must do so by fax by 4:00 p.m. that day. *See* email from Dennis C. Gentry to David A. Cobin, attorney for Banco, Daniel Hargraves, and the Panel, Ex. J to Hargraves Dec. It does not appear that Banco ever submitted a response.

During the November 26th telephone conference, which was not transcribed, the parties discussed their respective positions regarding the amount of security to be ordered. *See* Hargraves Dec. ¶ 10. Later that day, the Panel issued Interim Order # 1, which directed Banco to post an LOC for $708,714.04, the amount sought by MMO. *See id.* ¶ 11; Pet. 56.1 ¶ 9; Interim Order # 1, Ex. K to Hargraves Dec. That Order states, in pertinent part:

The panel has reviewed the recent correspondence from the parties concerning the request by [MMO] for security, has heard additional discussion in a tele-phone conference with counsel and has met telephonically to deliberate. The panel rules as follows:

1. Pursuant to the requirement of the subject reinsurance agreements, [Banco] is ordered to post a clean, irrevocable Letter of Credit in the amount of $708,714.04 by close of December 11, 2001 . . . .

Interim Order # 1.

On December 11, 2001, the deadline for Banco to comply with Interim Order # 1, Banco requested reconsideration of the Panel's decision. *See* 12/11/01 Letter from David A. Cobin to Daniel Hargraves and Panel, Ex. L to Hargraves Dec.; Notice of Motion for Reconsideration, Ex. L to Hargraves Dec.; Memorandum of Law ("Def.Recon.Mem."), Ex. L to Hargraves Dec. Banco argued that Interim Order # 1 was "premature, unwarranted and outside of the scope of the arbitration clause governing this arbitration" because it was made prior to discovery and without any evidence as to whether the Umbrella Agreement required "the posting of LOC's," whether "MMO ever requested that Banco post said LOC's," or "whether Banco disputed any such request for a LOC." Notice of Motion for Reconsideration at 2, 4. Thus, it stated:

[Banco] views the voluntary posting of the requested LOC, prior to the holding of the arbitration hearings themselves and the subsequent issuing of an award disposing of all disputes before the Panel on the merits, as being tantamount to a waiver of its FSIA rights regarding the posting of prejudgment security. Banco will never voluntarily waive these rights.

*Id.* at 3.

By email dated December 13, 2001, MMO opposed the motion for reconsideration. *See* 12/13/01 email to Daniel Hargraves to David A. Cobin and the Panel, Ex. M to Hargraves Dec. Banco submitted

its reply to the Panel on December 14, 2001. *See* 12/14/01 Letter from David A. Cobin to the Panel, attached to 5/10/02 Email from David A. Cobin to Daniel Hargraves, Ex. N to Hargraves Dec. On December 19, 2001, the Panel issued Interim Order # 2 which denied Banco's motion for reconsideration. *See* Interim Order # 2, Ex. 0 to Hargraves Dec.; Def. 56.1 ¶ 11. Interim Order # 2 states:

> The panel has reviewed the recent correspondence from the parties concerning [Banco's] Motion for Reconsideration of Interim Order # 1 and has met telephonically to deliberate. The panel rules as follows:
>
> 1. As expressed in Interim Order # 1, the subject reinsurance agreements require [Banco] to post the ordered Letter of Credit. Therefore, [Banco's] Motion for Reconsideration is hereby denied.
>
> 2. [Banco] is hereby ordered to comply with Interim Order # 1 in posting the required Letter of Credit as soon as possible, but not later than by close of business Friday, December 28, 2001.

*Id.*

Banco did not post the required Letter of Credit and instead commenced this proceeding to vacate the Orders

## II. JURISDICTION

■ Before proceeding to the issues raised by Banco, the first question is whether this Court has jurisdiction over this action. *See Promisel v. First American Artificial Flowers, Inc.,* 943 F.2d 251, 254 (2d Cir.1991) ("[S]ubject matter jurisdiction may be raised at any time, by the parties, or by the court *sua sponte*") (citing Fed.R.Civ.P. 12(h)(3)). "The FSIA provides the sole basis for obtaining subject matter jurisdiction over suits against foreign sovereigns brought in the United States." *Wasserstein Perella Emerging Markets Finance, LP v. Province of Formosa,* No. 97 Civ. 793, 2000 WL 573231, at *1 (S.D.N.Y. May 11, 2000) (citing *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 611, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992)); *see also* 28 U.S.C. § 1330; 28 U.S.C. § 1604. Under the FSIA, a foreign state or its instrumentality is presumptively immune from suit in the United States unless the relationship or transaction at issue falls under a specifically enumerated exception. *See* 28 U.S.C. § 1604; *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). Pursuant to the exception provided in section 1605(a)(6)(A), a foreign state or instrumentality is not immune to a motion to confirm an arbitration award where, as here, it agreed to submit to arbitration and the arbitration took place in the United States. *See* 28 U.S.C. § 1605(a)(6)(A); *Caja,* 293 F.3d at 396–97; *In re Arbitration Between Trans Chemical Ltd. and China Nat'l Machinery Import and Export Corp.,* 978 F.Supp. 266, 291 (S.D.Tex.1997) (*"In re Trans Chemical"*), aff'd, 161 F.3d 314 (5th Cir.1998).

This arbitration is also subject to the Inter–American Convention because it arises from a commercial relationship between citizens of signatory nations.[4] *See*

---

4. Both the United States and Uruguay have signed the Inter–American Convention. *See Employers Ins. of Wausau v. Banco Seguros Del Estado,* 34 F.Supp.2d 1115, 1122 (E.D.Wis.1999), aff'd, 199 F.3d 937, 942 (7th Cir.1999), *cert. denied,* 530 U.S. 1215, 120 S.Ct. 2218, 147 L.Ed.2d 251 (2000). They are also signatories to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), *see id.,* which applies to "any commercial arbitral agreement" as long as it does not (1) arise between two United States citizens, *and* (2) involve property located in the United States, *and* (3) have any reasonable relationship with one or more foreign states. *Jain v. de Mere,* 51 F.3d 686, 689 (7th Cir.1995); *see also* 9

*Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.,* 23 F.3d 41, 44 (2d Cir.1994). An action or proceeding falling under the Inter–American Convention is deemed to arise under the laws and treaties of the United States and the federal district courts have original jurisdiction over such an action or proceeding, regardless of the amount in controversy. *See* 9 U.S.C. § 302 (incorporating 9 U.S.C. § 203). Any party to the arbitration may apply to the district court for an order confirming an arbitral award "[w]ithin three years after an *arbitral award* falling under the Convention is made." 9 U.S.C. § 307 (incorporating 9 U.S.C. § 207) (emphasis added); *see also Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,* 529 U.S. 193, 203 n. 3, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000).

■ The parties have moved to confirm or vacate two rulings described by the Panel as 'Interim Orders', rather than as 'arbitral awards', thus raising the question of whether this action is ripe for judicial review. This issue appears to be one of first impression because the term "arbitral

award" is not defined in the Inter–American Convention[5] and there is no case law interpreting the term.[6]

■ An appropriate analogy may be made, however, to the Federal Arbitration Act (the "FAA"), which only permits a federal court to confirm or vacate an arbitration award that is "final".[7] *See E.B. Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 414 (2d Cir.1980); *Goldman v. Architectural Iron Co.,* No. 01 Civ. 8875, 2001 WL 1705117, at *3 (S.D.N.Y. Jan.15, 2001); *see also* 9 U.S.C. § 10(a)(4). An arbitrator's interim ruling is not a final award if it "does not purport to resolve finally the issues submitted to [the arbitrators]." *E.B. Michaels,* 624 F.2d at 414. However, an interim ruling is sufficiently final if it "finally and definitely disposes of a separate independent claim" even though "it does not dispose of all the claims that were submitted to arbitration." *Metallgesellschaft A.G. v. M/V Capitan Constante,* 790 F.2d 280, 283 (2d Cir.1986); *see also Kerr–McGee Refining Corp. v. M/T Triumph,* 924 F.2d 467, 471 (2d Cir.1991).

U.S.C. § 201 (New York Convention applies to "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought"); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,* 126 F.3d 15, 19 (2d Cir.1997) (holding that New York Convention governed award rendered in the United States that arose out of dispute involving two nondomestic parties and one United States corporation). Where the requirements of both the Inter–American Convention and New York Convention are met, the Inter–American Convention governs if "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter–American Convention and are member States of the Organization of American States." 9 U.S.C. ¶ 305(1); *see also Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,* 802 F.Supp. 1069, 1072–73 (S.D.N.Y. 1992), *rev'd on other grounds,* 991 F.2d 42 (2d Cir.1993). Here, Banco and MMO have provided no information concerning the citizen-

ship of any other parties to the Umbrella Agreement. However, because the parties agree that the Inter–American Convention governs, *see* Pet. Mem. at 13; Resp. Opp. at 7, that Convention applies here. *See Employers Ins. of Wausau,* 34 F.Supp.2d at 1122 (applying the Inter–American Convention under similar circumstances).

5. The Inter–American Convention refers to "an arbitral decision or award" but does not define these terms. 9 U.S.C. § 301.

6. Indeed, "[t]here is little case law interpreting the Inter–American Convention." *Employers Ins. of Wausau,* 34 F.Supp.2d at 1120.

7. "The prerequisite of finality promotes the role of arbitration as an expeditious alternative to traditional litigation." *Hart Surgical, Inc. v. Ultracision, Inc.,* 244 F.3d 231, 233 (1st Cir.2001) (citing *E.B. Michaels,* 624 F.2d at 414).

The Seventh Circuit and the Ninth Circuit have held that an arbitration panel's order requiring the posting of security to protect a possible final award is a "final" award subject to judicial review. *See Yasuda Fire & Marine Ins. Co. of Europe v. Continental Casualty Co.*, 37 F.3d 345, 347–48 (7th Cir.1994) (holding that arbitration panel's order requiring defendant to post an interim letter of credit was reviewable award under the FAA); *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir.1991) ("[T]emporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful ... are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA"). In *Yasuda*, the panel's order was deemed a reviewable "final award" even though it was a "preliminary procedural rulin[g]" that was "announced by the arbitrators at an organizational meeting with counsel for [the parties] *before* the arbitration ha[d] actually begun." [8] *Yasuda Fire & Marine Ins. Co. of Europe v. Continental Casualty Co.*, 840 F.Supp. 578, 579 (N.D.Ill.1993) (emphasis in original), *aff'd*, 37 F.3d 345 (7th Cir.1994).

The Second Circuit has not squarely addressed the question of whether an arbitrator's interim order mandating prejudgment security is reviewable under the FAA. It has, however, affirmed a district court's decision holding that an arbitral award requiring the establishment of an escrow account pending final determination of the merits was "a final decision ... ripe for confirmation." *Sperry Int'l Trade, Inc. v. Israel*, 689 F.2d 301, 304 n. 3 (2d Cir.1982). Moreover, numerous district courts in this Circuit have held that an arbitration panel's interim order requiring prejudgment security is sufficiently fi-

nal to allow for federal court review. *See British Ins. Co. of Cayman v. Water Street Ins. Co., Ltd.*, 93 F.Supp.2d 506, 513 (S.D.N.Y.2000) ("[A]n award of temporary equitable relief such as a security award, separable from the merits of the arbitration, is subject to federal review."); *Rakower v. Aker*, No. 98 Civ. 2652, 1998 WL 432092, at *3–*4 (E.D.N.Y. May 27, 1998) (holding that arbitrators' award of temporary interim equitable relief can be confirmed); *Home Indemnity Co. v. Affiliated Food Distributors, Inc.*, No. 96 Civ. 9707, 1997 WL 773712, at *3 (S.D.N.Y. Dec.12, 1997) (reviewing arbitration panel's "interim order" requiring defendant to post security pending a final award); *Atlas Assurance Co. of Am. v. American Centennial Ins. Co.*, No. 90 Civ. 5474, 1991 WL 4741, at *2–*3 (S.D.N.Y. Jan.16, 1991) (confirming interim award directing defendant to fund an escrow account for the benefit of the successful party as determined in the final award); *Konkar Maritime Enterprises v. Compagnie Belge D'Affretement*, 668 F.Supp. 267, 272 (S.D.N.Y.1987) (confirming arbitrators' interim order to establish jointly-held escrow account that was intended to establish "security for enforcement of an award in the event that respondent was found liable"); *Southern Seas Navigation Ltd. v. Petroleos Mexicanos*, 606 F.Supp. 692, 694 (S.D.N.Y.1985) (holding that order reducing the notice of a claim of lien was "not 'interim' in the sense of being an 'intermediate' step toward a further end. Rather, it is an end in itself, for its very purpose is to clarify the parties' rights in the 'interim' period pending a final decision on the merits."); *Sperry Int'l Trade v. Government of Israel*, 532 F.Supp. 901, 909 (S.D.N.Y. 1982), *aff'd*, 689 F.2d 301 (2d Cir.1982) (holding that arbitrators' order directing defendant to place a letter of credit in

---

**8.** The decision in *Pacific Reinsurance Management Corp.* does not indicate at what point in

the arbitral proceedings the interim order was issued. *See* at 935 F.2d at 1021.

escrow pending a final determination of the parties contentions was "a final Award on a clearly severable issue" that was "clearly subject to confirmation"); *see also Meadows Indem. Co., Ltd. v. Arkwright Mut. Ins. Co.*, No. Misc. 88–0600, 1996 WL 557513, at *3 n. 8 (E.D.Pa. Sep.30, 1996) ("Even though the arbitration panel's award is a interim provision for pre-hearing security, and the panel has not reached the merits of the case, this court may rule on motions to confirm and vacate the award."). Indeed, courts have reviewed such interim orders even when they were issued prior to a hearing on the merits. *See British Ins. Co. of Cayman*, 93 F.Supp.2d at 513 (holding that "a security award, separable from the merits of the arbitration," which was rendered prior to a hearing on the merits, was sufficiently final to be reviewed under the FAA); *Atlas Assurance Co. of Am.*, 1991 WL 4741, at *2–*3 (reviewing interim award ordering prejudgment security which was issued prior to a hearing on the merits).

Here, MMO's request that Banco post a letter of credit to secure a possible award was a claim "separate" and "independent" from the other claims submitted for arbi-

tration. *Metallgesellschaft A.G.*, 790 F.2d at 283. The Orders issued by the Panel, although issued prior to a hearing on the merits, "finally and conclusively dispose[d]" of this severable claim. *Id.; see also Yasuda*, 37 F.3d at 347–48; *British Ins. Co. of Cayman*, 93 F.Supp.2d at 513; *Atlas Assurance Co. of Am.*, 1991 WL 4741, at *2–*3. These Orders therefore constitute an "arbitration award" under the Inter–American Convention and are ripe for federal court review.

## III. LEGAL STANDARD FOR VACATUR OR CONFIRMATION OF AN ARBITRAL AWARD

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984). Under the Inter–American Convention, a district court's role in reviewing an arbitral award is strictly limited. The court is required to confirm the award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [Inter–American] Convention."[9] 9 U.S.C.

9. The seven specific grounds for refusal listed in the Convention are: (1) "the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made;" (2) "the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense;" (3) "the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed;" (4) "the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure had not been carried out in accordance with the law of the State where the arbitration took place;" (5) "the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made;" (6) "the subject of the dispute cannot be settled by arbitration under the law of th[e] State [of the tribunal];" or (7) "the recognition or execution of the decision would be contrary to the public policy ("order public") of th[e] State [of the tribunal]." 9 U.S.C. § 207. Banco does not claim that any of these provisions apply.

§ 302 (incorporating 9 U.S.C. § 207); *see also Employers Ins. of Wausau*, 199 F.3d at 942.

Because "[t]he Inter–American Convention incorporates the [Federal Arbitration Act's ("FAA") ] terms unless they are in conflict with the Inter–American Convention's terms," *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir.1994) (citing 9 U.S.C. § 307), courts may consider grounds for vacatur that are recognized under the FAA. *See International Ins. Co. v. Caja Nacional de Ahorro y Seguro*, No. 00 C 6703, 2001 WL 322005, at *3 (N.D.Ill. Apr.2, 2001) ("*Caja*"), *aff'd*, 293 F.3d 392, 396–97 (7th Cir.2002); *The Home Ins. Co. v. Banco de Seguros del Estado*, No. 98 Civ. 6022, 1999 U.S. Dist. LEXIS 22478 (S.D.N.Y. Feb. 28, 1999) ("*Home*") (Westlaw citation not avail.); *In re Trans Chemical*, 978 F.Supp. at 302–311. The FAA lists specific instances where an award may be vacated. *See* 9 U.S.C. § 10(a). Of relevance to this case is the provision permitting vacatur where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the ... matter submitted was not made."[10] 9 U.S.C. § 10(a).

■ In addition, the Second Circuit has recognized that a court may vacate an arbitration award that was rendered in "manifest disregard of the law." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir.2000). However, "review for manifest error is severely limited." *Id.*

The Second Circuit has cautioned that "manifest disregard clearly means more than error or misunderstanding with respect to the law." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir.1998) (quotation marks omitted). Specifically, a court may not vacate an arbitration award unless it finds that: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Greenberg*, 220 F.3d at 28; *see also Raiola v. Union Bank of Switzerland, LLC,*, 230 F.Supp.2d 355, 357 (S.D.N.Y.2002).

■ The party seeking vacatur of an arbitration award bears the burden of proving manifest disregard. *See Greenberg*, 220 F.3d at 28. "But, even if that party proves that the arbitrators' decision is based on a manifest error of [ ] law, a court must nevertheless confirm the award if grounds for the decision can be inferred from the facts of the case." *McDaniel v. Bear Stearns & Co., Inc.*, 196 F.Supp.2d 343, 351 (S.D.N.Y.2002); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997).

## IV. DISCUSSION

Banco contends that the Orders must be vacated because the Panel acted in manifest disregard of the law and exceeded its authority in rendering the Orders. This argument is based on Banco's claim that, as an instrumentality of a foreign state,[11] it

---

**10.** The other statutory grounds for vacatur listed in the FAA are: (1) the award was procured by corruption, fraud or undue means; (2) the arbitrator was guilty of "misconduct in ... refusing to hear evidence pertinent and material to the controversy;" (3) the arbitrators exhibited "evident partiality" or "corruption;" or (4) the arbitrators were guilty of "misconduct in refusing to postpone the hearing, upon sufficient cause shown," or

guilty of "any other misbehavior" that prejudiced the rights of any party. 9 U.S.C. § 10(a). Banco does not argue that any of these other provisions apply.

**11.** Banco claims that it is an instrumentality of a foreign state under the FSIA because it is wholly-owned by the government of the Republic of Uruguay. *See* Pet. Mem. at 5 (citing 28 U.S.C. § 1603). Although MMO insists

is immune from posting prejudgment security under FSIA.[12]

## A. The Panel Did Not Act in Manifest Disregard of the Law

■ The FSIA, passed by Congress in 1976, "governs all claims of immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities." *Stephens v. National Distillers & Chem. Corp.*, 69 F.3d 1226 (2d Cir.1996) (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983)). Pursuant to section 1609 of the FSIA, a foreign state or its instrumentality is generally immune from prejudgment attachment of its assets in the United States, unless that state explicitly waives its immunity. *See S & S Machinery Co. v. Masinexportimport*, 706 F.2d 411, 413 (2d Cir.1983) (citing 28 U.S.C. §§ 1609, 1610(d)). Specifically, that section states:

> that "Banco has not set forth adequate grounds to assert that it is a foreign sovereign," it accepts "for the purposes of this motion only that Banco is an Uruguayan corporation wholly owned by the Government of Uruguay." Resp. Opp. at 7.

12. Banco argued to the Panel that it should not make a decision on prejudgment security without giving the parties an opportunity to engage in discovery and present their evidence at a hearing. *See* Banco's Statement of Position at 5–8. Notably, however, Banco has not argued here that the Panel's decision to deny this request deprived it of "fundamental fairness," a valid basis for vacatur of an arbitration award. *British Ins. Co. of Cayman*, 93 F.Supp.2d at 517; *see also Atlas Assurance Co. of Am.*, 1991 WL 4741, at *2. In any event, case law from this district suggests that the Panel did not deprive Banco of "fundamental fairness" in issuing the Orders. *See British Ins. Co. of Cayman*, 93 F.Supp.2d at 517–19 (holding that arbitrators did not violate "fundamental fairness" by ordering prejudgment security based on the parties' "many long and forceful submissions," al-

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution . . .

28 U.S.C. § 1609. The Second Circuit has held that the prohibition against attachment may not be circumvented by denominating a prejudgment restraint as an "injunctio[n] against the negation or use of property rather than as [an] attachmen[t] against that property." *S & S Machinery*, 706 F.2d at 418. Thus, it held in *Stephens* that the posting of security required under section 1213(c) of New York Insurance Law constituted a prejudgment attachment from which foreign sovereigns were immune. *See* 69 F.3d at 1229.

Several courts have held, however, that prejudgment security may be imposed on a foreign state in the context of arbitration. Indeed, in a case very similar to this one, a court in this district confirmed an arbitral award requiring Banco to post pre-award security.[13] *See Home*, 1999 U.S. Dist.

> though there was no oral argument and no hearing on the merits of the underlying claims or substantive defenses); *Atlas Assurance Co. of Am.*, 1991 WL 4741, at *2–*3 (holding that arbitration panel did not violate "fundamental fairness" when it issued an interim award directing a defendant to post pre-judgment security after holding an "Organizational Meeting" at which it "received, considered and discussed the parties' statements of issues and heard verbal statements by the parties' representatives"); *but see Home Indemnity Co.*, 1997 WL 773712, at *2–*5 (holding that arbitrators denied defendant "fundamental fairness" by issuing an interim order requiring the posting of prejudgment security based on "the parties' Statements of Position, as well as oral argument from counsel" but without "even a threshold review of the underlying dispute or its merits in relation to either party's case" and without permitting "discovery of files central and dispositive to the dispute before it").

13. The only significant difference between *Home* and this case is that in Home the arbitration panel held hearings on phase one of a

LEXIS 22478, at *7–*20. In *Home,* as in this case, Banco claimed that the arbitrators' order should be vacated because it was in manifest disregard of the law. *See id.* at *14–*17. The court rejected Banco's argument, holding that Banco "waived its immunity by agreeing to arbitrate." *Id.* at *19 (citing *Employers Ins. of Wausau,* 34 F.Supp.2d at 1119). Having done so, the court held, Banco could not now "unilaterally control the terms of the arbitration by asserting FSIA immunity." *Id.* at *19–*20.

Banco argues the Panel should not have relied on *Home* because that case was decided incorrectly. *See* Memorandum of Law in Reply on Plaintiff's Motion and In Opposition to Defendant's Cross–Motion ("Pet.Repl.") at 9–14. Because the question before the Court is whether the arbitrators acted in "manifest disregard of the law", however, "the Court need not pronounce authoritatively upon [Banco's] claim." *Home,* 1999 U.S. Dist. LEXIS 22478 at *19. The question, rather, is whether the Panel ignored or refused to apply "well defined, explicit, and clearly applicable" law of which it was aware. *Greenberg,* 220 F.3d at 28. Because the *Home* decision provided the Panel with a basis for determining that Banco was not immune from posting prejudgment security, the Panel's decision was not in manifest disregard of the law. .

In any event, the Panel could also have relied on cases other than *Home* to infer that Banco was not immune from posting prejudgment security. In *Skandia Am. Reinsurance Corp. v. Caja Nacional de Ahorro y Segoro,* No. 96 Civ. 2301, 1997 WL 278054, at *1–*2 (S.D.N.Y. May 23, 1991), the court required defendant, an instrumentality of the Argentinian govern-

ment, to post prejudgment security pursuant to section 1213 of New York Insurance Law. Relying on *Stephens,* the defendant argued that it was not required to post security under section 1213 because the posting of security is considered a prejudgment attachment under the FSIA. *See id.* at *3. The court rejected defendant's argument, explaining that *Stephens* "did not involve an arbitral award." *Id.* (citing *Stephens,* 69 F.3d at 1229). Under the FSIA, the court explained, a foreign state's immunity is " 'subject to existing international agreements to which the United States is a party at the time of enactment of [the FSIA].' " *Id.* (quoting 28 U.S.C. § 1609) (alternation added). Because the United States acceded to the New York Convention in September 1970, before the enactment of the FSIA in October of 1976, the New York Convention constituted an "existing international agreement at the time the FSIA was enacted." *Id.* at *4.

Article VI of the New York Convention, to which both the United States and Argentina are signatories, stated:

> If an application for the setting aside or suspension of the award had been made to a competent authority ... the authority before which the award is sought to be relied upon may, if it considers proper, ... on the application of the party claiming enforcement of the award, order the other party to give suitable security.

*Id.* at 85 (quoting 9 U.S.C. § 201). The *Skandia* court found that defendant's objections to the petition, as well as its failure to pay the award as ordered, constituted an "application for the setting aside or suspension of the award." *Id.* at *5. Accordingly, it held that defendant was not

---

two phase proceeding prior to ordering Banco to post prejudgment security. *See* 1999 U.S. Dist. LEXIS 22478, at *1–*3. Because I have determined that the Panel's Orders con-

stitute reviewable "awards", despite the fact that they were issued prior to any hearing, *see supra* Part II, this difference is irrelevant to the issues addressed here.

immune from posting the pre-judgment security required by New York law.[14]  *See id.*

In *Caja*, the Illinois district court similarly held that the FSIA did not bar the imposition of prejudgment security on an instrumentality of Argentina.  *See* 2001 WL 322005, at *2. Like the court in *Skandia*, the Illinois court held that the New York Convention was an "existing international agreement" at the time the FSIA was enacted.  *See id.* at *1. It found that defendant's submission of affirmative defenses to plaintiff's motion to confirm the arbitration award constituted "an application to set aside the arbitral award" under Article VI of the New York Convention, and that defendant was therefore "not immune from the posting requirement of the Illinois Insurance Law." *Id.* at *2.

Here, the Panel could have reasonable inferred from *Skandia* and *Caja* that it could lawfully impose prejudgment security on Banco.  Uruguay, like Argentina, is a signatory to the New York Convention.[15] *See Employers Ins. of Wausau*, 34 F.Supp.2d at 1122.  Further, the Panel

could reasonably have interpreted Banco's motion for reconsideration, as well as its refusal to pay the ordered security, as an "application for setting aside" the Panel's original order.[16]  *See Caja*, 2001 WL 322005, at *2; *Skandia*, 1997 WL 278054 at *5. Thus, the Panel would not have been in manifest disregard of the law if it relied on Article VI of the New York Convention when it rendered Interim Order # 2, which ordered Banco to post prejudgment security.

Additional grounds for confirming the Orders are found in the Seventh Circuit's decision affirming *Caja. See* 293 F.3d at 400–01. While that decision was issued subsequent to the Orders, a court is required to confirm an arbitral award if it can find *any* grounds to support the arbitrators' decision.  *See Willemijn Houdstermaatschappij, BV*, 103 F.3d at 12; *McDaniel*, 196 F.Supp.2d at 351.  In *Caja*, the Seventh Circuit held that an instrumentality of Argentina could be required to post prejudgment security because Argentina had explicitly waived its immunity under the FSIA.[17] *See id.* at 399–400. Ac-

---

14.  The court again distinguished *Stephens*, explaining that because *Stephens* did not involve arbitration, "there was no relevant treaty that predated the FSIA or that would preempt the [immunity] provisions in the FSIA." *Skandia*, 1997 WL 278054 at *3 (citing *Stephens*, 69 F.3d at 1229).

15.  Banco claims that neither *Skandia* nor *Caja* provide authority for the Panel's decision because the Inter–American Convention rather than the New York Convention governs this action, and the United States did not accede to the Inter–American Convention until 1990, well after the FSIA was enacted.  *See* Pet. Repl. at 6–7.  Banco cites no authority, however, for the proposition that where the requirements of both the New York Convention and the Inter–American Convention are met, the New York Convention does not qualify as an "existing international agreement" under the the FSIA. 28 U.S.C. § 1609.  Nor does Banco claim that the Panel was made aware of any such authority.  Accordingly, the Panel

would not have acted in manifest disregard of the law if it based its decision on *Skandia* or *Caja*.

16.  While the Panel was not presented with any case law specifically holding that a motion to reconsider an arbitration award, when submitted to an arbitration panel, constitutes an "application for the setting aside or suspension" of an award, it was not presented with any case law to the contrary.  9 U.S.C. § 201.  Where there is no case directly on point, and existing case law suggests "the possibility" that the Panel's decision is lawful, the Court cannot conclude that the Panel manifestly disregarded of the law.  *McDaniel*, 196 F.Supp.2d at 361; *RPR Clearing v. Streich, Beacon Secs.*, No. 97 Civ. 0017, 1997 WL 460717, at *2 (S.D.N.Y. July 28, 1997).

17.  Although the Seventh Circuit based its decision on different reasoning than the lower court, it did not address—let alone reverse—the lower court's reasoning.  *See Caja*, 293 F.3d at 400 n. 15

cording to the Seventh Circuit, Argentina's adoption of the Inter–America Convention and the New York Convention—both of which permit the imposition of pre-judgment security when a party challenges an arbitral award—constituted an explicit waiver of the immunity granted by the FSIA.[18] *Id.* at 398–99. Because Banco is the instrumentality of a state that has also adopted both the Inter–American and the New York Convention, the Seventh Circuit's reasoning in *Caja* provides legal grounds for confirming the Orders.

## B. The Panel Did Not Exceed Its Authority in Ordering Pre–Judgment Security

Where arbitrators are accused of exceeding their powers, a court must ask "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir.1997); *see also McDaniel*, 196 F.Supp.2d at 350. In other words, this Court's role is to determine "whether the arbitrator[s] acted within the scope of [their] authority," or whether the arbitral award is "merely and example of the arbitrator's own brand of justice." *Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir.1992); *see also Home*, 1999 U.S. Dist. LEXIS 22478, at *14–*15.

 Here, the parties clearly expected the Panel to rule on the issue of pre-judgment security. This issue was listed as an agenda item for the November 5th Organizational Meeting, was fully briefed by both parties, and was orally debated before the Panel. *See* Organizational Meeting Checklist; MMO's Statement of Position; Banco's Statement of Position; Hargraves Dec. ¶ 7; Pet. 56.1 ¶ 10. Thus, the Panel was authorized to reach the issue. *See Home*, 1999 U.S. Dist. LEXIS 22478, at *15 (rejecting Banco's argument that the arbitrators exceeded their authority in requiring prejudgment security because "the question of whether security would be posted was raised by petitioner in both its preliminary statement to the panel ... and in petitioner's brief."). But "[e]ven if this issue was not specifically raised before the panel," the Panel "ha[d] the *inherent power* to require a party to post security" because "the arbitration agreement between the parties [did] not preclude such a remedy." *Id.* (emphasis added) (citing *Yasuda Fire & Marine Ins. Co. of Europe v. Continental Casualty Co.*, 37 F.3d 345, 350 (7th Cir.1994); *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1027 (9th Cir.1991)). Therefore, the Court cannot conclude that, by imposing prejudgment security, the Panel simply imposed its "own brand of justice." *Brooks Drug*, 956 F.2d at 25.

## V. CONCLUSION

For the reasons stated above, the Orders are confirmed and Banco's motion to vacate is denied. Accordingly, Banco's request for costs and attorneys' fees is denied. The Clerk of the Court is ordered to close this case.

SO ORDERED.

---

**18.** Article VI of the Inter–American Convention, like Article VI of the New York Convention, states that "[i]f the competent authority ... has been requested to annul or suspend the arbitral decision, the authority ... at the request of the party requesting execution, may also instruct the other party to provide appropriate guarantees." 9 U.S.C. § 301.